DANIELS ET AL. v. KNIGHT CARPET CO. ET AL.

1. PURCHASE OF STOCK IN TRADE AND GOOD-WILL — CONSTRUCTION OF PROVISO CONCERNING COMPETITION.— Appellants purchased a stock of carpets and curtains under a written contract, by the terms of which, among other things, they were to pay their vendors, during certain years, a stated sum for each month that they should encounter in the curtain and carpet business "no greater competition than" that of certain firms named, "whose stock of goods should not exceed $5,000 in value." *Held*, in an action on the contract, that appellants were not liable for such sum for months during which other persons competed with them, whose stocks aggregated $12,000 in value, though such competitors were what is termed "second-hand dealers."

2. APPEAL UNDER ACT OF 1885 — NEGLECT TO FILE AMENDED ABSTRACTS.— An appellee who fails to avail himself of the right given by act of 1885 (relating to appeals), to file an amended abstract showing such additions and amendments to the abstract of appellant as he deems necessary to a full understanding of the questions presented, cannot afterwards urge that appellant's abstract is imperfect and unfair.

*Appeal from District Court of Arapahoe County.*

THE contract sued upon in this case reads as follows:

"This agreement, made and entered into this 22d day of November, in the year of our Lord 1884, by and between J. G. Knight, F. A. Knight and G. P. Atmore, copartners as the Knight Carpet Company, all of the county of Arapahoe and state of Colorado, parties of the first part, and W. B. Daniels, W. G. Fisher and T. B. Croke, copartners

as Daniels & Fisher, and Mrs. H. H. Cordes and Philip
Feldhauser, Jr., copartners as Cordes & Feldhauser, all of
the county of Arapahoe and state of Colorado, parties of
the second part, witnesseth that the said first parties, for
and in consideration of the sums of money and agreement
hereinafter mentioned, and the further sum of $1 in hand
paid to said first parties by said second parties; the receipt
of which is hereby confessed and acknowledged, do hereby
sell, convey, transfer and set over unto the said parties of
the second part and their assigns their entire stock of mer-
chandise, located at Nos. 368 and 370 Arapahoe street, Den-
ver, Colorado, embracing carpets, rugs, matting, oil-cloth,
linoleums, window-shades and fixtures, lace curtains, up-
holstery goods, trimmings, and all such goods as are owned
and offered for sale by said first parties; also all store fixt-
ures of every kind and description whatsoever, and compris-
ing in part the following: One office, one safe, one desk,
one large counter, one large upright case, two tables, one
shade-rack, one horse, wagon and harness, one sewing-
machine, one house scale, and all shelving, awnings, gas-
fixtures, truck, work-benches, and tools, chairs, etc. It
being understood and agreed, and it is hereby agreed be-
tween the parties hereto, that the said first parties shall and
will make a true and correct inventory of all said goods
and merchandise and store fixtures; that said goods and
merchandise shall be invoiced at the prices which were paid
for the same kinds or brands of goods in the eastern mar-
kets on July 1, 1884, according to the eastern manufact-
urers' or dealers' bills to said first parties for said goods or
merchandise, with actual cost of transportation added, and
that the price to be paid to said first parties by said second
parties for said store fixtures as above is to be the sum of
$700.

"It is further agreed between the parties hereto that the
said second parties shall pay to the said first parties the
sum of $5,000 for their good-will in trade, and their agree-
ment not to enter into or engage in the business of buy-

ing and selling carpets, rugs, curtains, upholstery goods and trimmings, or any such goods as are usually kept for sale in carpet and curtain houses, between the 1st day of January, A. D. 1885, and the 1st day of January, A. D. 1886, at any point or place within the limits of Arapahoe county, either directly or indirectly, as a firm or as individuals, or in any way whatsoever, except it is provided that if the said first parties shall engage in the furniture trade, within the limits of said Arapahoe county, at any time during the continuance of this contract, it shall be their right and privilege to handle and deal in such upholstery goods as are used by other furniture dealers in Denver, Colorado, for the covering of furniture.    It is further agreed between the parties hereto that in consideration of said first parties remaining out of said carpet and curtain business during the years 1886 and 1887, and the sum of $1 to said second parties in hand paid by said first parties, the said second parties agree to pay the said first parties, on the last day of each month during the said years A. D. 1886 and 1887, the sum of $416.66: *provided*, however, that if any party or parties, or firm or firms, other than Daniels & Fisher, Cordes & Feldhauser, and Hart Brothers, shall commence or engage in said carpet and curtain business in the city of Denver, Colorado, at any time during the years A. D. 1886 and 1887, then, and in that event, said second parties may at once cease and discontinue to pay to said first parties, on the last day of each month, as above, the said sum of $416.66, except it is understood and agreed that if not more than one party other than the above-named Daniels & Fisher, Cordes & Feldhauser, and Hart Brothers shall engage in said carpet and curtain business during said years A. D. 1886 and 1887, and that said one party will confine himself or herself, as the case may be, to a stock of goods not exceeding in value the sum of $5,000, then, and in that case, the said second party shall continue to pay to said first parties the said sum of $416.66 monthly, as provided above.    It is agreed that if the said

second parties fail to pay to the said first parties the sum of $416.66 monthly, as provided above, for any of the reasons herein mentioned, then, and in that event, it shall be the right and privilege of said first parties to resume said carpet and curtain business, in which case this contract shall and will become null and void.

"It is understood and agreed that if any party or parties shall engage in said carpet and curtain business at any time during the years 1886 or 1887, in such a way as to relieve the second parties hereto from paying to the first parties hereto the said sum of $416.66 monthly, and that any such party or parties so engaged in said business shall cease and discontinue said carpet and curtain business at any time before the expiration of this contract, and if said first parties shall not have engaged in said business in the meantime, under the provisions of this contract, in which case this contract becomes null and void as before herein provided, then, and in that event, the said second parties shall resume the payment to said first parties of the sum of $416.66 monthly from the time of the discontinuance of said business by said parties, as herein specified; the intention of that part of this agreement which relates to the years A. D. 1886 and 1887 being that said second parties shall pay to said first parties the said sum of $416.66 for each month in said years A. D. 1886 and 1887 as they (the said second parties) shall encounter in said business no greater competition than said Hart Brothers and one other party, whose stock of said goods shall not exceed $5,000 in value. The said second parties agree to pay to said first parties the full price of their goods, merchandise and fixtures, in accordance with invoice to be made, as above specified, which invoice shall be completed and payments made on or before the 31st day of December, 1884, in lawful money of the United States, on which last-mentioned date the said first parties agree to turn over to said second parties their entire carpet and curtain business, and vacate the same unto the said second parties. It is agreed that the

usual cash discounts on the different kinds and classes of goods shall be allowed to said second parties by the first parties in computing the cost of said goods and merchandise as above specified. It is understood that the partnership agreement between Daniels & Fisher and T. B. Croke expires on the 1st day of July, A. D. 1886, and it is agreed that, should the said Croke fail to renew his present interest, or to secure any other interest, in the firm of Daniels & Fisher July 1, A. D. 1886, it shall not affect the force and virtue of this contract as between the other parties interested herein. It is further agreed that, should the death of any of the parties of the second part occur, causing the dissolution of either of the firms of Daniels & Fisher or Cordes & Feldhauser, then, and in that event, this contract becomes null and void; 'but it is expressly understood and agreed that, in any event, the said first parties shall not resume said carpet and curtain business during the year A. D. 1885.

"Witness our hands and seals the day and year first above written."

The stock of merchandise was soon after invoiced and the sale fully consummated, the parties of the second part taking possession of the property and paying therefor. The sum of $5,000 was also paid for the good-will of the parties of the first part, and as a consideration for their remaining out of the business until the 1st day of January, A. D. 1885. The said parties of the first part, not having re-engaged in the carpet and curtain business up to the 1st day of the following month of March, at that time demanded payment from the parties of the second part of the sum of $416.66 for the preceding months of January and February, under the contract. Appellants refused to comply with this demand, claiming a release from the monthly payments because other parties had engaged in the carpet and curtain business in said city to such an extent as to discharge them from any further payment to appellees under the contract. Appellees took issue upon this claim. The case

was tried to the court without the intervention of a jury, and a judgment rendered in favor of appellees for the sum of $942.27, this being the amount claimed for the months of January and February, with interest to the time of the trial. Exceptions having been duly reserved at the trial, the case is brought here for review.

Messrs. PATTERSON & THOMAS, for appellants.

Mr. C. J. HUGHES, Jr., for appellees on rehearing.

MR. JUSTICE HAYT delivered the opinion of the court.

The only question presented for our determination in this case grows out of the proviso contained in the contract, to the effect that appellants shall be discharged from liability for the monthly payments immediately upon the happening of certain conditions in reference to competition.

The contract may be briefly summarized as follows: *First.* It provides for the sale of the entire stock in trade of the Knight Carpet Company to appellants, at cost, and the sale of the store fixtures for the sum of $700. *Second.* For the payment of $5,000 to appellees for their good-will in trade, and their agreement not to engage in the carpet or curtain business within Arapahoe county before the 1st day of January, 1886. *Third.* An agreement to pay appellees the sum of $416.66 per month during the years 1886 and 1887, subject to the following conditions: (*a*) Appellees not to engage in the business during the time; (*b*) if no person other than appellants, Hart Bros., and one other, whose capital should not exceed $5,000, shall engage in this business during the time, and if appellants should fail to make the monthly payments because of others engaging in the business, then appellees might, at their option, resume the curtain and carpet business; (*c*) if any party or parties should engage in said business during said years in such a way as to relieve appellants from making the monthly pay-

ments, and thereafter discontinue such business, then the monthly payments were to be renewed, if appellees had not in the meantime engaged in the carpet and curtain business. The agreement in reference to the payment of the $416.66 per month is finally stated in the contract as follows: "The intention of that part of this contract which relates to the years A. D. 1886 and 1887 being that said second parties shall pay to said first parties the said sum of $416.66 for each month in said years A. D. 1886 and 1887 as they (the said second parties) shall encounter in said business no greater competition than said Hart Bros., and one other party, whose stock of said goods shall not exceed $5,000 in value."

By the express terms of the written agreement appellants' liability for the payment of the $416.66 per month was made to depend upon the condition that they should encounter no greater competition in the carpet and curtain business than said Hart Bros., and one other party, whose stock of said goods should not be more than $5,000 in value, while the testimony shows that besides the stock carried by Hart Bros. there were other dealers engaged in the carpet and curtain business during these months, whose combined stock amounted to about $12,000.

We are not embarrassed in this case by any conflict in the evidence. The undisputed facts are that at all times during the months of January and February, 1886, the following persons, in addition to Daniels & Fisher, Cordes & Feldhauser, and Hart Bros., were engaged in the carpet and curtain business in the city of Denver, to wit: David McCall, with a stock valued at over $3,500; William Gadsby, with a stock of about $500; A. J. Arfsten, with a stock valued at between $3,000 and $4,000; G. W. Gildersleeve, who carried a stock of $500 or $600; Pat Casey, with a stock of about $3,000. In addition to these there were several other dealers, carrying stocks of curtains and carpets, ranging in value from $200 to $500 each.

The learned judge who tried the case below was of the opinion that these parties, although dealing in new carpets and curtains, and purchasing from first hands in large quantities, should not be considered in competition with appellants for the reason that they were what is commonly termed "second-hand dealers." It was the undoubted right of the parties in making the contract to have made an exception for such dealers in the written instrument. They did not do so, however, and for the court to undertake to vary the terms of the written instrument so as to exclude such dealers would be equivalent to writing into the contract something not put there by the parties.

The law will neither make, nor permit to be made, for parties a different contract from that which they have made for themselves, and a court cannot, by construction, defeat the express stipulation of the parties. These principles are well settled. 2 Pars. Cont. secs. 497, 560. This contract is clear and unambiguous. The moment appellants met with greater competition in the city of Denver than that encountered from Hart Bros. and one other party, whose stock of carpets and curtains it was agreed should not exceed in value the sum of $5,000, their liability to pay the sum of $416.66 monthly, or any other amount, ceased. It makes no difference by whom or in what manner the stores were opened, or under what name the business should be conducted, whenever they were compelled to encounter greater competition than that specified, they were released from liability by the express terms of the written instrument. It is unnecessary to consider the other assignments of error. The judgment must be reversed and the cause remanded.

*Reversed.*

### ON PETITION FOR REHEARING.

PER CURIAM. This appeal was taken under the act of 1885, and the court relied upon appellants' abstract of record

for the matters of fact stated in the opinion. If counsel for appellees claimed that this abstract was imperfect or unfair, he was at liberty, under the statute, to file an amended abstract, showing such additions and amendments as he deemed necessary to a full understanding of the questions presented for decision. Failing in this, the court is not at liberty to extend its investigation beyond the abstract of record for the purpose of determining the questions presented. *Hurd v. McClellan*, 13 Colo. 7. The other matters presented upon this petition are covered by the original opinion in the cause, and we see no reason to change the views therein expressed. The rehearing will be denied.

*Rehearing denied.*